# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW SCHLEGEL and JENNIFER SCHLEGEL, | : |
| | : |
| Plaintiffs | : |
| | : CIVIL ACTION NO.3:11-CV-2190 |
| v. | : |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | : (JUDGE MANNION) |
| | : |
| Defendants | : |
| | : |

## MEMORANDUM

Presently before the court is defendant State Farm's motion for partial summary judgment seeking dismissal of plaintiffs' bad faith and malfeasance claims. (Doc. No. 29.) In particular, defendant argues that plaintiff has failed to point to concrete proof in the record that State Farm, plaintiff's automobile insurer, engaged in bad faith conduct or violated the provisions of the UTPCPL when it requested documentation before evaluating plaintiff's claim. After reviewing the motion and the materials related thereto, the motion for partial summary judgment will be **GRANTED**.

## I. FACTUAL BACKGROUND

The instant action stems from an underinsured motorist ("UIM") claim. On or about December 20, 2007, Mrs. Schlegel was seriously injured in a motor vehicle when the vehicle in which she was a passenger was struck by

a negligent motorist. (Doc. No. 30, at 2.) Plaintiffs subsequently filed a personal injury claim against the tortfeasor who carried $100,000 in bodily injury liability coverage. While that claim was pending, Mrs. Schlegal requested first-party medical benefits under their own State Farm insurance policy. (Id.) These first-party benefits were paid in full until February 13, 2008, when plaintiffs reached the $5000 first-party medical benefit policy limit. (Id. at 3.)

Plaintiffs' policy with State Farm provides for underinsured benefits of up to $100,000, after the original tortfeasor's coverage has been exhausted. In other words, plaintiffs must establish that the damages resulting from a motor vehicle accident have exceeded $100,000 before State Farm is liable under the terms of the policy. (Id.)

Here, Mrs. Schlegel settled her third party claim for $25,000 out of an available $100,000 personal liability policy of the original tortfeasor. State Farm informed her and her husband that "State Farm, as a UIM insurer, is entitled to full credit of the $100,000 liability limits and would only be responsible to pay any damages over and above $100,000." (Id.)

The UIM clause of plaintiffs' insurance contract states that the insured party must "give [State Farm] all the details about the death, injury, treatment, and other information that [the insurer] may need as soon as reasonably possible after the injured insured is first examined or treated for the injury." (Doc. No. 31 Ex. 5, at 25.) Furthermore, it states that plaintiff must "provide

2

written authorization for [State Farm] to obtain (a) medical bills, (b) medical records, (c) wage, salary, employment, tax, business, and financial information; and (d) any other information [State Farm] deems necessary to substantiate the claim." (Id.) Finally, the agreement requires production of all "(a) medical bills; (b) medical records; (c) wage, salary, employment, tax, business, and financial information; and (d) any other information [State Farm deems] necessary to substantiate the claim." (Id.)

On November 25, 2009, after plaintiffs filed their UIM claim, State Farm requested documentation from plaintiff's counsel such as medical records and medical bills so that State Farm could evaluate the claim. (Doc. No. 31 Ex. 9, at 1.) When plaintiffs failed to answer, State Farm sent at least nine additional inquiries between November 25, 2009, and October 29, 2010, but did not receive a response until October 29, 2010, when plaintiffs' counsel responded with the requested information. (Doc. No. 31 Ex. 9, at 20.) Two weeks later, State Farm conducted its UIM evaluation and, finding that the value of the claim did not exceed $100,000, denied the claim. (Doc. No. 31 Ex. 11, at 1.) Plaintiffs provided additional medical documentation on March 2, 2011, but State Farm again determined that the value did not exceed $100,000 and again denied the claim. (Doc. No. 31 Ex. 11, at 4,7.)

## II. PROCEDURAL HISTORY

On October 12, 2011, plaintiffs filed a complaint in the Court of Common

3

Pleas of Susquehanna County, Pennsylvania alleging various claims under Pennsylvania's Unfair Insurance Practice Act, Pennsylvania's Motor Vehicle Financial Responsibility Law, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL"). (Doc. No. 1 Ex. 1.) Plaintiff also brought a claim for bad faith under 42 Pa.C.S.A. §8371, Pennsylvania's bad faith insurance statute. (Doc. No. 1 Ex. 1.) On November 23, 2011, defendant removed the case to the United States District Court for the Middle District of Pennsylvania, (Doc. No. 1). On November 30, 2011, the defendant filed a motion to dismiss. (Doc. No. 4.) Plaintiffs responded by filing a motion to remand, (Doc. No. 6), and a brief in opposition to the defendant's motion to dismiss on December 28, 2011. (Doc. No. 9.) The court denied plaintiffs' motion to remand, granted defendant's motion to dismiss, but additionally granted plaintiffs leave to amend the complaint on February 10, 2012. (Doc. No. 11.)

On February 22, 2012, plaintiffs filed an amended complaint alleging the same causes of action as the original complaint but providing further factual detail. (Doc. No. 12.) On March 7, 2012, defendant again moved to dismiss on the same grounds as the original complaint, (Doc. No. 13), and on July 13, 2012, the court granted the motion in part and denied in part. (Doc. No. 21.)

After the parties completed discovery, defendant filed the present motion for summary judgment and a statement of undisputed material facts as required by Rule 56 and Local Rule 56.1, on February 21, 2013, asserting

4

generally that plaintiffs failed to provide sufficient evidence to sustain their remaining claims in Count II and Count III. (Doc. No. 29, Doc. No. 30, Doc. No. 31.) In response, plaintiffs filed a document titled "Plaintiffs' Memorandum of Law in Opposition to Defendant's *Motion to Dismiss* Plaintiff's Bad Faith Claims," (emphasis added)(Doc. No. 38). Unfortunately for the plaintiffs, this was not a motion to dismiss under Rule 12(b), rather it is a motion for summary judgement pursuant to Rule 56. Since the plaintiffs have failed to file the required statement of undisputed material facts, or dispute the defendant's statement of undisputed material facts under Local Rule 56.1, defendant's statement of material facts will be deemed to be admitted.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery [including depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838

(M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant]

6

will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

**IV. DISCUSSION**

Jurisdiction in this case is predicated upon diversity pursuant to 28 U.S.C. §1332, which applies when the parties are citizens of different states and the amount in controversy is greater than $75,000. Sitting in diversity, the court must apply Pennsylvania law, as it governs the cause of action here. Yurecka v. Zappala, 472 F.3d 59, 62 (3d Cir. 2006) ("A federal court sitting in diversity is required to apply the substantive law of the state whose laws govern the action.").

*A. Count II: Bad Faith Claim*

An insurance bad faith claim under 42 Pa.C.S.A. §8371 is only actionable when the insurer (1) lacked a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis. Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 522 (3d Cir. 2012) (*citing* Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143 (Pa.Super.Ct. 2006). Mere negligence on the part of the insurer is insufficient to constitute bad faith. Post, 691 F.3d at 523 (*citing* Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999)). Although the

7

term "bad faith" is not defined by the Pennsylvania bad faith statute, Pennsylvania courts have interpreted it as "any frivolous or unfounded refusal to pay proceeds of a policy." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680,688 (Pa.Super.Ct. 1994)). Therefore, a reasonable basis is all that is required to defeat a claim of bad faith. J.C.Penney Life Ins. Co., 393 F.3d at 367 (*citing* Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir. 1995)).

Insurer bad faith claims are analyzed under the "clear and convincing" standard, which requires that the plaintiff show "that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." J.C.Penney Life Ins. Co., 393 F.3d at 367 (citing Bostick v. ITT Hartford Group, Inc., 56 F.Supp. 2d 580, 587 (E.D.Pa. 1999). Thus, the plaintiff's burden in opposing a motion for summary judgment is commensurately high in light of the substantive evidentiary burden at trial. J.C. Penney Life Ins. Co., 393 F.3d at 367 (citing Kosierowski v. Allstate Ins. Co., 51 F.Supp2d 583, 588 (E.D.Pa. 1999)).

In this matter, plaintiffs have failed to meet their burden of proving that a reasonable juror could find that State Farm lacked a reasonable basis for requesting plaintiff's medical documentation and that it knew of, or recklessly disregarded, the lack of reasonable basis. J.C. Penney Life Ins. Co., 393 F.3d

8

at 367. The precise legal issue here is whether State Farm made unreasonable document requests with the intent to improperly delay and ultimately deny the payment of UIM benefits. (Doc. No. 20, Doc. No. 21.) Plaintiffs claim that State Farm's request for documents was made in bad faith because State Farm already possessed those records from previous litigation, so its request therefore lacked a reasonable basis and ultimately resulted in a denial of UIM benefits. (Doc. No. 12, at 7.) Plaintiffs also argue that State Farm acted in bad faith by requiring documentation to verify their policy coverage when State Farm allegedly already possessed the documents governing the terms of coverage. (Id.)

As an initial matter, plaintiffs' insurance policy clearly states that State Farm may request medical documentation when evaluating a claim for UIM benefits. (Doc. No. 31 Ex. 6, at 25.) The policy provides that the insured party must "give [State Farm] all the details about the death, injury, treatment, and other information that [the insurer] may need as soon as reasonably possible after the injured insured is first examined or treated for the injury."(Doc. No. 31 Ex. 5, at 25.) Furthermore, it states that plaintiff must "provide written authorization for [State Farm] to obtain (a) medical bills, (b) medical records, (c) wage, salary, employment, tax, business, and financial information; and (d) any other information [State Farm] deems necessary to substantiate the claim." (Id.) Finally, the agreement requires production of all "(a) medical bills; (b) medical records; (c) wage, salary, employment, tax, business, and

financial information; and (d) any other information [State Farm deems] necessary to substantiate the claim." (Id.) Plaintiffs do not dispute that these clauses were a part of their insurance policy, nor do they dispute that they allow State Farm to request plaintiffs' medical records. The sole question, therefore, is whether State Farm acted in bad faith by requesting medical records when it allegedly already had those records on file and by asking to provide proof of coverage.

Defendant does not deny that State Farm already possessed some of Mrs. Schlegel's medical records from prior litigation. (Doc. No. 12, at 7). It points out, however, that it required an updated report of medical expenses because Mrs. Schlegel had been undergoing medical treatment on an ongoing basis throughout the course of this litigation as well as since the prior third-party insurance lawsuit. (Doc. No. 30, at 9.) Therefore, while defendant did have some of Mrs. Schlegel's medical records on file, State Farm believed them to be incomplete as of the date of its request. (Id.) In this case, the resolution of Mrs. Schlegel's UIM claim depended heavily on the amount of medical expenses she incurred as a result of her accident. Her policy provides that State Farm is only liable under the UIM clause if the amount of the claim exceeds $100,000. (Doc. No. 30, at 3.) Therefore, State Farm had a reasonable basis for requesting updated medical records. Clearly, defendant did not act in bad faith by requesting medical records from plaintiff.

Even if defendant State Farm did not have a reasonable basis for its

request, the facts presented to the court demonstrate a level of culpability akin to negligence at best. Plaintiffs never notified State Farm that the company already had Mrs. Schlegel's medical records on file, and none of the facts indicate that State Farm employees working on the UIM claim had knowledge of plaintiff's claim against the original tortfeasor, thereby putting them on notice that the company already may have had the medical records. Without any proof that State Farm had knowledge of its access to the medical records, plaintiff has no claim for bad faith. Krisa v. Equitable Life Assur. Soc., 113 F.Supp.2d. 694, 702 (M.D.Pa. 2000) (bad faith requires "absence of a reasonable basis for denying a claim under the policy and *knowledge or reckless disregard* of the lack of such reasonable basis).

As for State Farm's alleged insistence on filing an Affidavit of Coverage, defendant argues that it never required any such documentation. (Doc. No. 30, at 11). In support, State Farm cites a letter which appears to have created the confusion:

> As to your client's applicable household coverage on the date of loss, a review of your client's household identifies three vehicles including a 2004 Chevy Trailblazer with non-staking [sic] Uninsured/Underinsured Coverage of 100/300, a 1998 Chevy K 1500 pickup with non-stacking Uninsured/Underinsured Coverage of 100/300 and a 2003 Honda CRV with non-stacking Uninsured/Underinsured Coverage of 100/300. Should you have any questions regarding these vehicles identified or the applicable coverage, please see that your client executes and returns the attached Uninsured/Underinsured Affidavit of Coverage. (Doc. No. 30, at 11.)

Defendant explains in its brief in support that plaintiff's counsel

responded to this letter by submitting an Affidavit of Coverage with a note saying, "I have enclosed for your convenience the Schlegel Uninsured/Underinsured Affidavit of Coverage. If you have any questions do not hesitate to contact me." (Id.) Notably, the facts do not indicate that State Farm required the affidavit at all. Rather, it appears that State Farm asked plaintiff to submit an affidavit only if it had "any questions regarding these vehicles identified or the applicable coverage." (Id.) Furthermore, plaintiff submitted the affidavit a little over a month later and nine months before plaintiff finally submitted the requested medical records, the other documentation at issue in this case. (Doc. No. 30, at 11-12.) Therefore, the affidavit does not appear to have delayed State Farm's evaluation of the claim.

Even viewing the evidence in the light most favorable to plaintiffs, no reasonable juror could conclude that State Farm had no reasonable basis for its request for medical documentation and, assuming State Farm required an affidavit, the Affidavit of Coverage. State Auto Property and Cas. Ins. Co. v. Bonk, 11-CV-1796, 2013 WL 3356045, *5 (M.D.Pa. July 3, 2013) (summary judgment standard). There is clear evidence on the record that State Farm requested medical documentation at least nine times over the course of a year, and plaintiffs never provided the requested information. (Doc. No. 31.) When plaintiffs finally complied with the request, State Farm took only two weeks to evaluate the claim. (Doc. No. 31 Ex. 6.) Furthermore, the facts do

not support plaintiff's contention that defendant ever required an Affidavit of Coverage, just that defendant required one if plaintiffs had any questions regarding "the vehicles identified or applicable coverage." (Doc. No. 30, at 11.) As such, this court will **GRANT** defendant's motion for summary judgment on Count II of the complaint, plaintiffs' bad faith claim.

*B.     Count III: UTPCPL Claim*

The UTPCPL is a Pennsylvania consumer protection law that seeks to discourage "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Bennet v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 151 (Pa.Super.Ct. 2012) (*quoting* 73 P.S. § 201-9.2(a)). As such, it "provides a private right of action for any person who purchases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property on account of the seller's unfair or deceptive acts or practices." Garner v. State Farm Fire and Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008). Section 201-2 provides a list of conduct that violates the UTPCPL, but in the context of insurance claims only malfeasance, the improper performance of a contractual obligation, satisfies the requirements of the UTPCPL. Id. (*citing* Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995)). The Third Circuit has established that "refusal to pay [an insurance claim] . . . constitutes nonfeasance [and] is not actionable."

13

Gardner, 544 F.3d at 564 (*citing* Horowitz, 57 F.3d at 307). Furthermore, in order to bring a private cause of action under the UTPCPL, a party must show that she justifiably relied on the defendant's wrongful conduct or false or misleading representation and that the plaintiff suffered harm as a result of that reliance. Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438-39 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.").

In this case, there is no evidence that demonstrates that the defendant made a misrepresentation or engaged in wrongful conduct in handling plaintiff's UIM claim. As previously noted, plaintiffs' insurance policy clearly states that State Farm may request medical documentation to evaluate its claims. (Doc. No. 31 Ex. 6, at 25.) Therefore, it appears that defendant complied with the terms of the contract in requesting documentation, and none of the facts show malfeasance or the improper performance of these contractual obligations.

In response to defendant's position, plaintiff argues, "where a [p]laintiff pleads beyond only failure to pay a contractual obligation through nonfeasance and allege the question of the propriety of [d]efendants' behavior in performing their duty than [sic] the pleadings are sufficient to defeat a [m]otion to [d]ismiss." (Doc. No. 38, at 6.) This argument fails entirely because it describes a party's burden at the motion to dismiss stage, where as here

14

the court is presented with a motion for summary judgment. (Doc. No. 29.) In analyzing a motion to dismiss, federal courts are instructed to accept all factual allegations as true and indulge in substantial inference to find that a complaint has merit. Ashcroft v. Iqbal, 556 U.S. 662 (2009). At the motion for summary judgment stage, a plaintiff must present the court with concrete proof of the allegations listed in the complaint, a burden which plaintiff has failed to carry here. Bailey v. McMahon, 07-CV-2238, 2013 WL 1339080, *3 (M.D.Pa. April 1, 2013) (explaining that non-movant must point to concrete evidence in the record to survive summary judgment). As such, defendant's motion for summary judgment with respect to the UTPCPL claim, Count III of the complaint, will be **GRANTED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:** August 8, 2013

O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-2190-01.wpd